522 So.2d 810 (1988)
Mark Andrew BURCH, Appellant,
v.
STATE of Florida, Appellee.
No. 68881.
Supreme Court of Florida.
February 18, 1988.
Rehearing Denied May 2, 1988.
*812 H. Dohn Williams, Jr., Sp. Public Defender of H. Dohn Williams, Jr., P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., and Diane E. Leeds, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Burch appeals his conviction for first-degree murder and his sentence imposing the death penalty. We have jurisdiction, article V, section 3(b)(1), Florida Constitution. We affirm the conviction but vacate the sentence and remand for imposition of a life sentence.
We earlier reversed Burch's previous conviction because of harmful error and remanded for retrial. The facts adduced on retrial are essentially those set forth in Burch v. State, 478 So.2d 1050 (Fla. 1985), which we will not repeat here. There was no doubt that Burch committed the killing, the only issue during the guilt phase was whether he had the capacity to form a specific intent. On retrial, Burch did not present an insanity defense but, nevertheless, maintained that his history of drug and alcohol abuse and his consumption of drugs on the day of the murder prevented him from forming a specific intent to commit premeditated murder. The jury rejected this argument by returning a guilty verdict. During the penalty phase, the jury recommended life imprisonment which the judge overrode by imposing a sentence of death.
Burch raises only one issue on the guilt phase of the trial. Before trial, Burch requested the appointment of a Dr. Lerner to examine him and to testify on the effects of PCP. Dr. Lerner is apparently an internationally known expert on PCP whom Burch maintains is the preeminent expert. Initially Burch's counsel represented to the court that the fee would be relatively modest, approximately four thousand dollars, and the court was prepared to honor that request. However, after Dr. Lerner returned from Belgium where he was assisting the Attorney General of the United States at an international conference, it was learned that the fee would be fourteen thousand dollars. The trial judge then ruled that two local experts who had assisted in the earlier trials were competent and would be assigned. Burch nevertheless maintains that only Dr. Lerner was capable of providing the required expertise and that refusal to appoint Dr. Lerner violated Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), because the decision was based on financial considerations. We disagree. In holding that a defendant whose mental condition was seriously in issue was entitled to the assistance of a competent psychiatrist, the Ake court was careful to note that its holding did not mean
that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the States the decision on how to implement this right.
Id. at 83, 105 S.Ct. at 1096. We are satisfied that the two local experts were in fact familiar with the effects of PCP and drug abuse and fully qualified to testify as experts.
Burch raises three issues concerning the imposition of the death penalty. Eight days after the penalty phase ended on May 21, 1986, Burch moved the court to reconsider the sentence and to order that reports and testimony concerning Burch's adjustment to incarceration be brought before the court as potential nonstatutory mitigation. The basis for this request was the holding in Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), that such evidence is relevant. In Skipper, unlike here, the defendant proffered the mitigating evidence prior to sentencing and the trial judge refused the evidence as irrelevant. Skipper represents no change in the law, it merely applies Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and holds that such evidence is relevant. Essentially, *813 Burch is asking that we hold that Skipper should be applied so as to require reopening previously imposed death sentences in order to determine if there is Skipper mitigating evidence. We decline to do so. Skipper was issued prior to the sentencing here, yet Burch made no proffer of evidence or otherwise raised the question prior to sentencing. Further, Burch was entitled to introduce this type of evidence even before Skipper issued. Francis v. Dugger, 514 So.2d 1097 (Fla. 1987). Moreover, the record shows that a pretrial motion from Burch asserted that he was a member of the Ku Klux Klan whose political and moral beliefs dictated that he be segregated from non-Aryan prisoners. This hardly comports with the asserted belief that Burch is or will be a well-adjusted prisoner. In addition, the trial judge pointed out to Burch's counsel that the county jailer had approached the judge prior to trial claiming that Burch was unmanageable and should be returned to more secure prison facilities. Burch also asserts that he was entitled to reopen the sentencing procedures under Florida Rule of Criminal Procedure 3.800. Rule 3.800 states that it is not applicable to cases in which the death sentence is imposed.
Burch next argues that the trial court erred in refusing to consider a presentence investigation report (PSI) prepared in 1974 for previous, unrelated convictions. Burch concedes that the trial judge is not required to have a PSI prepared in death sentence cases and that the trial judge did have available an updated 1984 PSI which he considered. We see no error. Neither the state nor the judge is required to prepare or consider PSIs in death penalty cases and we see no reason why an outdated report should be considered when a current report exists.
Burch's final point concerns the override of the jury's advisory recommendation that life imprisonment, not death, be imposed. In the sentencing order, the judge found three aggravating circumstances under section 921.141(5), Florida Statutes (1981): section 921.141(5)(a), capital felony committed by a person under sentence of imprisonment; section 921.141(5)(b), previous conviction of felony involving the use of violence to another person; and section 921.141(5)(i), capital felony committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The judge found in mitigation that as a result of voluntary consumption of PCP, the defendant's ability to conform his conduct to the requirements of law was impaired, section 921.141(6)(f), but gave this impairment little weight because the degree of impairment was speculative and remote and could not be conclusively established. The trial judge also found that no other statutory or nonstatutory mitigating circumstances existed. Burch does not challenge any of the aggravating factors found by the sentencing judge. He argues several other points, however. First, he asserts, the presence of any mitigating factor on which the jury might have relied bars an override of a jury's recommendation. We recently rejected this proposition in another case involving a jury override. State v. Bolender, 503 So.2d 1247, 1249 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 209, 98 L.Ed.2d 161 (1987). Burch next argues that the jury might have found two other mitigating factors in addition to the single factor found by the judge. First, that the acquaintances whose quarrel with the victim precipitated this homicide were never charged with any offense but were equally culpable. Second, that the jury might have found that Burch's family history of physical and drug abuse and his early sentence as an adult for crimes committed as a juvenile were mitigating. Thus, Burch argues, in view of these three mitigating factors which the jury might have found and given great weight, it cannot be said that "the facts suggesting a sentence of death [are] ... so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1976). Although the trial judge found only one of the three mitigating factors on which Burch relies and gave little weight to the factor which he did find, we agree that the jury could have found all these factors and might have concluded that the mitigation *814 outweighed the aggravation. Thus, as in Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986), the Tedder test is not met and the trial judge erred in overriding the advisory recommendation of the jury.
We affirm the conviction but vacate the sentence of death with directions that Burch be sentenced to life imprisonment pursuant to section 775.082(1), Florida Statutes (1981).
It is so ordered.
McDONALD, C.J., and OVERTON, BARKETT and KOGAN, JJ., concur.
SHAW, J., concurs in part and dissents in part with an opinion in which EHRLICH and GRIMES, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion.
SHAW, Justice, concurring in part, dissenting in part.
I agree that the conviction should be affirmed but do not agree that the death sentence should be vacated. It is the trial judge who is responsible for determining the sentence in Florida and, notwithstanding the jury recommendation, that determination should be based on an independent weighing of the aggravating and mitigating factors. Combs v. State, No. 68,477 (Fla. Feb. 18, 1988); Grossman v. State, No. 68,096 (Fla. Feb. 18, 1988); Smith v. State, 515 So.2d 182 (Fla. 1987); Aldridge v. State, 503 So.2d 1257, 1259 (Fla. 1987); Pope v. Wainwright, 496 So.2d 798, 804 (Fla. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987); Darden v. State, 475 So.2d 217, 221 (Fla. 1985). The trial judge here prepared a comprehensive sentencing order wherein he examined each of the potential aggravating and mitigating factors, explained his reasoning, and rendered his factual findings on each factor and the balance to be struck between them. Those factual findings are supported by competent substantial evidence. It is not the function of this Court to substitute its sentencing judgment for that of the trial judge and, as a matter of law,
[f]inding or not finding that a mitigating circumstance has been established and determining the weight to be given such ... is within the trial court's discretion and will not be disturbed if supported by competent substantial evidence. Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985).
State v. Bolender, 503 So.2d 1247, 1249 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 209, 98 L.Ed.2d 161 (1987).
In the case at hand, it is uncontroverted that three aggravating circumstances are present: the murder was committed while Burch was on parole from a previous violent felony; the murder was cold, calculated and premeditated without any pretense of moral or legal justification; and Burch had previously been convicted of a felony involving violence to a person. The last two factors deserve special notice and weight. Concerning the violent felony, less than a month prior to this murder, without warning or provocation, Burch came up behind a service station attendant whose attention had been diverted by Burch and fired a shot into the back of the attendant's head. Fortuitously, the attendant survived and Burch was only convicted of attempted first-degree murder. Burch was the only person involved in this violent crime and there can be no suggestion that someone else encouraged him to murder the attendant. Concerning the cold, calculated, and premeditated factor, despite Burch's claim that he was on drugs immediately prior to the murder and does not remember the events, there was evidence that hours before the murder Burch obtained the shot-gun and shells without permission from the home of the owner and placed them in a location ready for retrieval. Moreover, in the hours preceding the murder, Burch also reconnoitered the victim's neighborhood and located his apartment. At the time of the murder, Burch went directly to the apartment, pausing only to ensure that a person outside was not the intended victim. Shortly after the killing, Burch recounted the details of the murder to the parents of a friend. Contraposed to this evidence that *815 Burch knew precisely what he was doing and what he had done, was the testimony of Burch and his relatives and friends that he was a chronic drug abuser who was on drugs the day of the murder and did not recall the murder. This is a classic instance of a fact-finder, the judge here, having to resolve a conflict in evidence based on the credibility of the witnesses and the persuasiveness of their testimony. The only conceivable mitigation here which could outweigh these egregious aggravating factors would be a finding of severe impairment of Burch's ability to conform his conduct to the requirements of law. The judge found some impairment but concluded that it did not rise to the necessary level of severity. The judge's finding is supported by the competent substantial evidence recited above concerning Burch's actions on the day of the murder. Indeed, it should be noted that a finding of severe impairment would be inconsistent with the uncontroverted finding of the judge that the murder was committed in a cold, calculated, premeditated manner without any pretense of legal or moral justification and the verdict of the jury that Burch was capable of specific intent. I would affirm the sentence below.
The basic difficulty we face here, and it can only become more acute, is that the Tedder rule is inconsistent with Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), as that decision has been amplified and applied by Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) and Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). My views on why we must recede from Tedder in order to preserve the constitutionality of our capital punishment system have been set forth in my special concurrences to Combs and Grossman and I will not repeat them at length here. It is enough to say that here, unlike the Tedder case itself where the judge's sentencing order standing alone and notwithstanding the jury recommendation could not have supported the death penalty, we would unquestionably affirm the judge's sentencing order except for the jury recommendation. Thus, our decision to vacate the death sentence rests entirely on the advisory recommendation of the jury which has rendered no factual findings on which to base our review. This treatment of an advisory recommendation as virtually determinative cannot be reconciled with e.g., Combs, and our death penalty statute. Moreover, this situation of largely unfettered jury discretion is disturbingly similar to that which led the Furman Court to hold that the death penalty was being arbitrarily and capriciously imposed by juries with no method of rationally distinguishing between those instances where death was the appropriate penalty and those where it was not. Absent factual findings in the advisory recommendation, any distinctions we might draw between cases where the jury reconmends death and those where it recommends life must, of necessity, be based on pure speculation. This is not a rational system of imposing the death penalty as Furman requires.
EHRLICH and GRIMES, JJ., concur.
GRIMES, Justice, concurring in part, dissenting in part.
While I do not share the conviction of Justice Shaw that we must recede from Tedder, I fully agree with his analysis that the circumstances of this case justified the jury override. This was a cold-blooded killing by a man who had just been paroled six months before after serving time for burglary, robbery and unlawful possession of a firearm during the commission of a felony. By the time of sentencing, he had also been convicted of attempting to murder someone else.
The suggestion that the acquaintances whose quarrel with the victim precipitated the homicide are equally culpable is spurious because they neither committed the murder nor sought to have it accomplished. The reference to family history as a mitigating factor is supported only by testimony that Burch's natural father used to discipline him by beating him with a belt and that Burch began using drugs and alcohol at an early age. If anything, the fact that Burch was sentenced as an adult for crimes *816 committed as a juvenile would tend to be aggravating rather than mitigating.
The only mitigating evidence of consequence was that Burch's capacity to conform his conduct to the requirements of law was substantially impaired by the use of PCP. The trial judge recognized this but properly concluded that it was insufficient to outweigh the aggravating circumstances.
I would affirm both the conviction and the sentence.