639 So.2d 6 (1994)
James A. MORGAN, Appellant,
v.
STATE of Florida, Appellee.
No. 75676.
Supreme Court of Florida.
June 2, 1994.
*8 Richard L. Jorandby, Public Defender, and Richard B. Greene, Asst. Public Defender, West Palm Beach, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen., and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee/cross-appellant.
Steven M. Goldstein, Sp. Counsel, Tallahassee, amicus curiae for Volunteer Lawyers' Resource Center of Florida, Inc.
PER CURIAM.
James A. Morgan appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm Morgan's conviction for first-degree murder. However, because of admitted error in the sentencing order and the substantial mitigating factors applicable to Morgan at the time he committed the murder, including that he was sixteen years of age, that he was of marginal intelligence, and that he committed the crime during a rage, we vacate his sentence of death and remand this case with directions that the trial court impose a sentence of life imprisonment.
*9 This case is before this Court for the fourth time.[1] In his fourth trial, Morgan was convicted of the brutal murder of a sixty-six-year-old woman. The record reflects the following facts regarding this crime. Morgan worked for his father's lawn service and, on the day of the murder, had been instructed to mow the victim's lawn. The morning of the murder, Morgan had been drinking and had been sniffing gasoline. Later that day, he went to the victim's residence to mow her lawn. On Morgan's request, the victim let Morgan into her home to use the restroom and telephone. He became upset because he believed that she was calling his parents and, in the words of the prosecutor, "went into a rage." After entering her home, he crushed her skull with a crescent-wrench and a vase and stabbed her approximately sixty times. He also bit her breast and traumatized her genital area. Numerous defensive-type wounds were found on her hands.
After evidence was discovered that connected Morgan to the crime, he was charged with first-degree murder. At the time of the crime, Morgan was sixteen years old, of marginal intelligence, and unable to read or write. Additionally, he had sniffed gasoline and consumed alcohol regularly for a number of years before the incident and stated that he sniffed gasoline and consumed alcohol on the day of the attack.
In addition to other evidence connecting Morgan to the crime, the testimony of a dental expert at trial positively matched the bite marks on the victim with Morgan's teeth. Evidence was also presented that Morgan was barefooted at the time of the crime and that his footprints were left in the blood at the scene.
Morgan essentially admitted that he murdered the victim. He claimed, however, that he was insane and intoxicated at the time he committed the crime and that the crime was not premeditated. Medical experts testified for both Morgan and the State regarding Morgan's insanity defense. Morgan's experts testified that he was sane before and after the crime but that he was temporarily insane during portions of the crime. The State presented testimony that, although Morgan was in a rage when he committed the murder, he was not insane. The jury rejected Morgan's insanity and intoxication defenses and found him guilty of first-degree murder.
At the penalty phase of the trial, neither side presented any evidence, relying instead on the evidence presented during the guilt phase. The jury, by an eight-to-four vote, recommended that Morgan be sentenced to death. The trial judge then sentenced Morgan to death, finding one factor in mitigation (extreme emotional disturbance) and two factors in aggravation (heinous, atrocious, or cruel and committed during the course of an enumerated felony). The trial judge failed to find Morgan's age of sixteen or his low intelligence as mitigating factors.
Morgan now contests both his conviction and sentence, claiming that: (1) the prosecutor violated Morgan's attorney-client privilege; (2) the admission of statements Morgan made to the police violated his rights to counsel and to silence; (3) the felony-murder instruction was improper; (4) the trial judge erred in refusing to appoint additional experts; (5) a special jury instruction on irresistible impulse was improper; (6) Morgan's statements to mental health experts were improperly admitted at trial; (7) statements regarding the victim's character were improperly admitted at trial; (8) an expert of the State improperly commented on the credibility of a defense witness; (9) Morgan was improperly subjected to being rehypnotized and evidence of that rehypnotization was improperly admitted at trial; (10) the trial court improperly ordered Morgan to be examined by the State's expert; (11) the record on appeal is inadequate; (12) execution of a person who was sixteen at the time *10 of the offense is unconstitutional; (13) Morgan's sentence is disproportionate; (14) the trial judge wrongfully rejected certain mitigating circumstances; (15) the jury instruction on the aggravating factor of heinous, atrocious, or cruel was unconstitutional; (16) the trial judge erred in finding and in allowing the jury to consider the felony-murder aggravator given that Morgan was previously acquitted of felony-murder; (17) the State's penalty phase closing argument was improper and inflammatory; (18) the trial judge erred in failing to address all the mitigation proffered by Morgan; (19) the trial judge erred in finding that the murder was heinous, atrocious, or cruel; and (20) the death penalty is unconstitutional. Eleven of these issues concern the guilt phase of Morgan's trial; the remaining nine issues concern the penalty phase.

Guilt Phase
In his first argument, Morgan contends that statements made by the prosecutor during trial violated Morgan's attorney-client privilege. During opening argument, the prosecutor reiterated a purported conversation that Morgan had with Dr. Caddy, a defense expert. Specifically, the prosecutor told the jury about a conversation between Morgan and Dr. Caddy in which Morgan stated that a previous defense counsel had informed him that the issue of insanity was crucial to his case and that he should simply not present himself forthrightly on the whole matter. During closing argument, the prosecutor again referred to Morgan's conversation with Dr. Caddy by stating that Morgan told Dr. Caddy that the insanity defense was a "bunch of bull." Morgan contends that no evidence was ever introduced at trial to support these statements and that these statements were devastating to his insanity defense and penalized his right to counsel.
Communications from a defendant to a confidential expert regarding the specific facts of a crime are indeed privileged under the attorney-client privilege. Lovette v. State, 636 So.2d 1304 (Fla. 1994). The protection of such communications, however, is waived once the defendant calls the expert as a witness at trial and opens the inquiry regarding those communications. Id. at 1307-08. In this case, the defense called Dr. Caddy as a witness at trial, Dr. Caddy testified regarding Morgan's narration to him of how the crime occurred, and Dr. Caddy provided testimony on cross-examination, without objection, that supported the comments made by the prosecutor in his opening and closing remarks. Consequently, Morgan waived the attorney-client privilege by calling Dr. Caddy as his expert and opening the door to the State's inquiry. We therefore find this claim to be without merit.
In his sixth claim, Morgan makes a similar argument. He states that, while under hypnosis, he told a court-appointed psychiatrist, Dr. Vaughn, that "I must kill [the victim]." Before trial, Morgan filed a motion to exclude the statement, which was denied. Although neither Morgan nor Dr. Vaughn testified at trial, the State introduced Morgan's statement at trial through its cross-examination of Dr. Caddy, one of Morgan's experts, and through direct examination of Dr. Dietz, an expert for the State. Morgan contends that the introduction of this statement was prejudicial and violated his rights against self-incrimination and to confront witnesses.
Both Dr. Caddy and Dr. Dietz used the results of Dr. Vaughn's examination in forming the basis of their opinions regarding Morgan's state of mind at the time of the offense. Further, Dr. Vaughn was to be called as a defense witness during an earlier trial, but was precluded from testifying when Morgan was denied the opportunity by the trial court to present the insanity defense. By providing the results of Dr. Vaughn's examination to Dr. Caddy and then calling Dr. Caddy as a witness, Morgan waived any privilege that might have attached to the statements he made to Dr. Vaughn. Moreover, even if the statement had been erroneously admitted, we find that its introduction was harmless. Morgan gave numerous versions of how the murder occurred to different experts and this was but one of many conflicting statements he made to different experts regarding his state of mind during the crime.
*11 Next, Morgan contends that statements he made to an officer were erroneously introduced at trial because the statements were obtained in violation of his right to counsel and right to remain silent. After Morgan's first trial, he was interrogated by a police officer after being read his Miranda[2] rights. At the time of the interrogation, Morgan was represented by counsel but the officer made no attempt to contact that counsel before interrogating Morgan. During the interrogation, Morgan told the officer that he entered the victim's house to use the telephone; after using the phone, he left the house; when he later reentered the house, he found the victim had been murdered; and, after he found the victim, Charles Yawn, his co-worker, held a knife on him, and forced him to bite the victim's breast and clean up the blood. Morgan contends that the officer obtained these statements in a deliberate attempt to procure a statement from Morgan in violation of his constitutional rights. Additionally, Morgan contends that the introduction of these statements prejudiced him because the statements portrayed him as cunning and calculating and jeopardized his insanity defense. Consequently, Morgan claims that the admission of these statements at trial was erroneous and prejudicial.
The record reflects that the officer questioned Morgan at the request of Morgan's parents, who were thinking about retaining private counsel for Morgan. Initially, the officer was under the belief that private counsel was being obtained and would be present at the interview. At the last minute, however, the private counsel, who never was officially retained, declined to attend the interview. Consequently, at the time of the interview, the public defender's office was still representing Morgan. Although under most circumstances the officer should have contacted that office before interviewing Morgan, we cannot say, under the circumstances of this case, that the statements were unconstitutionally elicited. The officer came at the request of Morgan's parents and, when the officer arrived to interview Morgan, Morgan told the officer that he wanted to talk with him. On these facts, we find that Morgan voluntarily initiated communication with the officer. Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (Fifth Amendment right to counsel may be waived through defendant's voluntarily initiation of communication). Additionally, Morgan provided this same version of events to a psychiatrist and what he told that psychiatrist was also admitted at trial. Consequently, we find that even if the statements were not voluntarily given to the officer, any error in admitting those statements was harmless.
In his third claim, Morgan argues that the instruction on felony murder should not have been given to the jury because he was previously acquitted of felony murder in Morgan I. Morgan states that the trial judge made a specific finding in Morgan I that the evidence was insufficient to support a theory of felony murder. Consequently, Morgan asserts that the giving of the instruction violates his right against double jeopardy.
A review of the record reflects that Morgan was not acquitted for felony murder in Morgan I and that Morgan's characterization of the trial judge's ruling on Morgan's motion for acquittal in Morgan I was taken out of context. Although the trial judge did state in Morgan I that he did not think that there was a prima facie case of felony murder, he went on to state, "[B]ut I don't need to discuss that any further." The trial judge instructed the jury on both premeditated and felony murder. Because Morgan was not specifically acquitted of felony murder in any of his earlier trials, we reject this claim.
In his fourth claim, Morgan argues that he was entitled to the appointment of additional experts. The record reflects that at least five experts were appointed as defense experts for Morgan throughout the years following his arrest. For this trial, the State retained two new experts. After retention of those experts by the State, Morgan requested the appointment of additional experts to aid his defense. The State objected to Morgan's proposed experts on the grounds that those experts were biased and were part of a *12 campaign to outlaw the execution of juvenile offenders. Based on the State's objections, the trial judge refused to appoint any additional experts proposed by Morgan. Instead, the judge appointed a doctor of the judge's choice, but that doctor did not testify at the trial.
We note that Morgan's request for the appointment of additional experts was to aid his defense and did not involve rule 3.216(d) (appointment of court experts after a notice of insanity is filed). The approval by the trial judge was merely necessary to permit the payment of costs necessary to hire the expert. Additionally, we note that the State was not required to obtain the trial judge's approval to retain its experts. Because of this disparate treatment, Morgan contends that the denial of his request violated his right to due process because he is entitled to the same procedural rights to obtain experts as the State.
Clearly, an indigent defendant has a constitutional right to choose a competent psychiatrist of his or her personal choice and is entitled to receive funds to hire such an expert. Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); Burch v. State, 522 So.2d 810 (Fla. 1988). Nonetheless, such a defendant is not entitled to an infinite number of experts or to match the State's expenditures dollar for dollar. In this case, Morgan retained at least five competent experts to aid in his defense, some finding that he was insane at the time he committed the murder and some finding that he was not. Consequently, while we agree that the trial judge should not have refused Morgan's request on the grounds that the experts were biased, we find that the denial of Morgan's request for additional experts was harmless given the number of experts previously retained to aid in his defense.
Morgan next argues that the trial judge erred in instructing the jury that "irresistible impulse is not recognized in Florida as an excuse for an unlawful act." Morgan argues that the instruction was confusing, an unnecessary repetition of matters already covered by standard jury instructions, and prejudicial. Specifically, Morgan contends that the jury may have incorrectly applied the special instruction beyond the question of insanity to the question of premeditation given the instruction's reference to "excuse." On review, we find that the instruction is a correct statement of the law and was proper. The defense experts focused on Morgan's explosive rage in committing the crime, and the jurors needed to understand that loss of control due to an emotional impulse or explosion is not a recognized defense in Florida.
Morgan also argues that statements regarding the victim's character were improperly admitted at trial. Specifically, Morgan contends that the testimony of the victim's neighbor should not have been admitted because it was irrelevant and designed solely to create sympathy. We disagree. The neighbor testified to facts regarding the victim's residence on the day of the murder. Thus, the neighbor's testimony was properly introduced at trial. Moreover, the brief references to the victim's character, if error, were harmless given the other evidence introduced at trial.
In Morgan's eighth claim, he contends that an expert of the State erroneously commented on the credibility of a defense witness. Without question, it is error for one witness to testify regarding the credibility of another witness, even if the witness testifying is an expert. Tingle v. State, 536 So.2d 202 (Fla. 1988). The comments at issue here, however, involved the testimony of an expert witness regarding the validity of hypnosis and whether testimony obtained thereunder could be taken as true. When asked whether the statements Morgan made while under hypnosis could be taken as true, the expert stated: "You can never take the hypnotic statement as truth because hypnosis does not lead to truth. The whole concept that hypnosis leads to truth is wrong." Because the expert was testifying regarding the validity of statements made under hypnosis in general, rather than testifying regarding the credibility of Morgan, we find that the testimony was properly admitted at trial.
In his ninth claim, Morgan claims that he was improperly subjected to being rehypnotized and that evidence of that hypnotic session was improperly admitted at trial. Specifically, *13 Morgan alleges that his being forced to be rehypnotized violated his right to remain silent because he was forced to make a statement for the prosecution that was later used at trial. We note that it was Morgan's counsel who initially requested that Morgan be rehypnotized. In any event, we need not reach the merits of this argument because the attempt to rehypnotize Morgan failed. Because of that failure, the only evidence generated by the second hypnotization was that of an expert who testified on behalf of the State that hypnosis is generally consistent over time. Consequently, we find that this argument is without merit.
In Morgan's tenth claim, he asserts that the trial court improperly ordered him to be examined by the State's expert. We previously rejected this argument in Henry v. State, 574 So.2d 66 (Fla. 1991) (because State must prove sanity when an accused raises insanity as a defense, State is entitled to have defendant examined by State's psychiatric expert to obtain evidence relevant to that defense). Consequently, we find this argument to be without merit.
We also reject Morgan's claim that the record on appeal is inadequate. Morgan asserts that the transcript contains numerous references to testimony as being "inaudible." Because of these references to inaudible testimony in the transcript, Morgan maintains that he was unable to properly brief the issues in this case and therefore has been denied due process. After having reviewed the entire record, we find that the transcript is virtually complete and that the inaudible references in the transcript do not prevent meaningful review.

Penalty Phase
Regarding the penalty phase, Morgan first argues that the trial judge erroneously rejected certain mitigating circumstances. Specifically, Morgan contends that the trial judge erroneously used the jury's rejection of the insanity defense, the voluntary intoxication defense, and lack of premeditation defense in the guilt phase to reject those factors in mitigation. Additionally, Morgan claims that the trial judge erroneously rejected as a mitigating circumstance the fact that Morgan was only sixteen at the time he committed the crime.
We note that the trial judge's sentencing order in this case is confusing at best. First, in considering the mitigating factor of committed while under the influence of extreme mental or emotional disturbance, the trial judge stated that Morgan was "in a rage" but knew what he was doing and that what he was doing was wrong. The trial judge stated that no evidence existed to prove this factor; however, he then stated that this mitigating factor "is proven, but did not play a major part in the happening of the tragedy." Next, the trial judge stated that he was bound by the jury's rejection of the insanity defense in the guilt phase in evaluating whether Morgan suffered from a mental infirmity, disease, or defect as mitigation. The trial judge then determined that Morgan's age could be considered as a mitigating circumstance only if it was relevant to his mental and emotional maturity and ability to take responsibility for his actions. Under that standard, the trial judge found that Morgan's age of sixteen was not a mitigating circumstance because Morgan's low IQ was still within the normal range. The trial judge also rejected all nonstatutory mitigating circumstances and specifically stated that he was rejecting that Morgan committed the murder while in a "sudden rage" because the jury had rejected that defense during the guilt phase even though that is how the prosecutor portrayed Morgan's actions.
The State concedes that the sentencing order was defective in this regard. Among other errors, the trial judge should not have relied on the jury's verdict to reject factors in mitigation.
The rejection of [a defendant's] insanity and voluntary intoxication defenses does not preclude consideration of statutory and nonstatutory mental mitigation. Moreover, we have made clear that "when a reasonable quantum of competent, uncontroverted evidence of a mitigating circumstance is presented, the trial court must find that the mitigating circumstance has been proved."
Knowles v. State, 632 So.2d 62, 67 (Fla. 1993) (emphasis added) (quoting Nibert v. State, *14 574 So.2d 1059, 1062 (Fla. 1990)). Nor should the trial judge have rejected Morgan's age as a mitigating factor. Section 921.141(6)(g), Florida Statutes (1989), specifically states that the age of a defendant at the time of the offense is to be considered in mitigation if applicable. The standard used by the trial judge was erroneously taken from Eutzy v. State, 458 So.2d 755, 759 (Fla. 1984), cert. denied, 471 U.S. 1045, 105 S.Ct. 2062, 85 L.Ed.2d 336 (1985), wherein this Court, in evaluating whether the defendant's age of forty-three should be considered in mitigation, determined that a person who has reached "an age of responsibility cannot reasonably raise [age] as a shield against the death penalty." By propounding that standard in Eutzy, we in no way meant to preclude the ability of a trial court to consider in mitigation the fact that a defendant was only sixteen at the time the offense was committed. In fact, given that Morgan was only sixteen at the time the crime was committed, we find that age must be found as a mitigating circumstance in this case. To apply the standard used by the trial judge would effectively eliminate age as a mitigating factor in almost every case.
After reviewing the record, we find that a reasonable quantum of competent evidence was presented to establish the following factors in mitigation: (1) that Morgan was under the influence of extreme mental or emotional disturbance at the time he committed the crime; (2) that his ability to appreciate the criminality of his conduct was substantially impaired; (3) that he was only sixteen at the time of the crime; (4) that he was of marginal intelligence, was extremely immature, had a learning disorder, and was unable to read or write; (5) that he had sniffed gasoline regularly for many years; (6) that he had sniffed gasoline on the day of the murder; (7) that he was brain-damaged; and (8) that he had no history of violence.
Finally, we address Morgan's claim that his sentence of death is disproportionate. In reviewing a death sentence, we must consider and compare the circumstances of the case at issue with the circumstances of other decisions to determine if the death penalty is appropriate. Livingston v. State, 565 So.2d 1288 (Fla. 1988). When the mitigating circumstances listed above are considered against the two factors in aggravation, we must agree that a sentence of death is indeed inappropriate in this case. This is especially true given that Morgan was only sixteen at the time he committed the offense and that he had been sniffing gasoline on the day of the murder and for many years before the murder. See Livingston (death sentence is disproportionate when mitigating circumstances of youth, abusive childhood, inexperience, immaturity, marginal intelligence, and extensive substance abuse effectively outweigh two aggravating circumstances of previous conviction of violent felony and committed during armed robbery). The fact that one of the aggravating circumstances in this case was heinous, atrocious, or cruel does not preclude our finding that Morgan's sentence of death was disproportionate. See Nibert v. State, 574 So.2d 1059 (Fla. 1990) (even when victim suffered multiple stab and defensive wounds and death was heinous, atrocious, or cruel, substantial mitigation, including diminished capacity, may make the death penalty inappropriate); Smalley v. State, 546 So.2d 720 (Fla. 1989) (given substantial mitigation, death penalty was inappropriate even though killing was heinous, atrocious, or cruel). We therefore remand this case with directions to the trial judge to resentence Morgan to life imprisonment. Because of this disposition, we find that we need not reach the merits of Morgan's other arguments regarding his sentence of death.
Accordingly, we affirm James A. Morgan's conviction for first-degree murder but vacate his sentence of death and remand this case with directions that the trial court impose a sentence of life imprisonment without the possibility of parole for twenty-five years.
It is so ordered.
GRIMES, C.J., SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
OVERTON, J., concurs specially with an opinion, in which GRIMES, C.J., concurs.
*15 OVERTON, Justice, specially concurring.
I concur. While I agree that the sentencing order was defective and that the mitigating circumstances of mental condition and age and the rules of proportionality require a life sentence, I write to emphasize that this defendant should never be released on parole into society. In this instance, the life sentence should truly mean a life sentence.
GRIMES, C.J., concurs.
NOTES
[1] See Morgan v. State, 392 So.2d 1315 (Fla. 1981) (Morgan I) (conviction and sentence of death reversed because bifurcated insanity procedure used in Morgan's trial was subsequently held to be unconstitutional); Morgan v. State, 453 So.2d 394 (Fla. 1984) (Morgan II) (conviction and sentence reversed because trial court erred in refusing to permit Morgan to raise the insanity defense); Morgan v. State, 537 So.2d 973 (Fla. 1989) (Morgan III) (conviction and sentence reversed because trial court erroneously excluded medical expert opinion testimony that was based on information obtained from Morgan by hypnosis).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).