658 So.2d 550 (1995)
Jessie J. CADE, Appellant,
v.
STATE of Florida, Appellee.
No. 92-142.
District Court of Appeal of Florida, Fifth District.
June 2, 1995.
*551 James B. Gibson, Public Defender, and M.A. Lucas, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Rebecca Roark Wall, Asst. Atty. Gen., Daytona Beach, for appellee.

ON MOTION FOR REHEARING
GRIFFIN, Judge.
Appellant's motion for rehearing is granted. We withdraw our prior opinion and substitute the following in its stead.
Appellant seeks review in this consolidated appeal of his convictions in two cases arising out of the robberies of two "fast food" restaurants in Citrus County, in the course of which appellant allegedly kidnapped and sexually battered female employees. In Case No. 91-208, he was convicted of kidnapping while armed, sexual battery while armed, burglary of a conveyance while armed, aggravated battery with a firearm and grand theft. In Case 91-208, he was convicted of robbery with a firearm, kidnapping while armed, and sexual battery while armed. We reverse.
*552 Although there is circumstantial evidence of the defendant's guilt in both cases, neither victim was able, at any time, to identify her assailant, and their physical description of the attacker did not closely match appellant. Appellant's mother corroborated the appellant's alibi in virtually every particular, including his explanation of why he was found in possession of twenty-four $10 bills hidden in his underwear, some of which bore markings like those used by one of the fast food restaurants. Accordingly, the testimony of the state's DNA expert that appellant's DNA matched that taken from semen found on the clothing of the victims in both cases was crucial to the state's case.
From the inception of the case, defense counsel sought the appointment of a DNA expert. Defense counsel promptly filed a motion for appointment of an expert that specifically identified the expert proposed to be retained and an included estimate of fees. The trial court refused to appoint a DNA expert for the defendant because defense counsel failed to make any "showing as a need to have an expert to confront anything at this point." The court further explained:
THE COURT: I think y'all have not demonstrated any necessity to show that there's a need for an expert. I'll deny that motion. Again, it's open. After you take the deposition you find that there's something that you can't get through it, you can receive at the library at the university, or wherever, then I'll reconsider the motion. At this point, there's been no showing so I'll deny the motion.
The response of defense counsel was:
[A]nd, furthermore, due to the complex nature of DNA evidence  I understand the Court wants me to provide ground for why we need this, but due to the complicated nature of that particular evidence, I can't tell the Court what I'm looking for because it's so complicated.
A layman can't really tell whether or not it is proper evidence. They could walk in here with an expert and provide insufficient scientific data and without an expert we would not know the difference.
* * * * * *
I've also been informed that ... the State has obtained a genetics expert, and so I would add that and it's an additional ground as to why it's important.
* * * * * *
Judge, as a matter of fact, in  these things can be very complicated. I don't know about Jacksonville. I do know that in the past history, DNA tests in most of the laboratories where they initially started DNA testing, there have been some bugs in the initial testing. And this test is among the first tests that Jacksonville has run... .
Section 914.06, Florida Statutes (1991), provides:
Compensation of expert witnesses in criminal cases.  In a criminal case when the state or an indigent defendant requires the services of an expert witness whose opinion is relevant to the issues of the case, the court shall award reasonable compensation to the expert witness that shall be taxed and paid by the county as costs in the same manner as other costs.
Section 27.54(3), Florida Statutes (1991), further provides in pertinent part:
The public defender's offices shall also be provided with pretrial consultation fees for expert or other potential witnesses consulted before trial by the public defender ... which costs are certified by the public defender as being useful and necessary in the preparation of a criminal defense, provided that nothing herein shall be construed to prohibit the county from contesting the reasonableness of the expenditure in the court wherein the criminal case is brought... .
It should not go unobserved that, unlike the federal statute,[1] Florida's current statutes do *553 not explicitly create a procedure for "appointment" or court authorization in advance of hiring an expert. Prior to its amendment in 1985, section 914.06 did contemplate the obtaining of an advance order authorizing an expert. The available legislative history suggests that the 1985 amendments were designed in part to provide fees for pre-trial expert consultations for both the state attorney and for the public defender. Staff Analysis, Fla. House of Representatives HB 1023 (April 16, 1985); see also "Statement of Substantial Changes Contained in Committee Substitute for SB 591" Fla. Senate Appropriations Committee (May 23, 1985).
Since the intent of the statute is unclear and since the few Florida cases that address the expert compensation issue speak in terms of "appointment," e.g. Burch v. State, 522 So.2d 810, 812 (Fla. 1988); Martin v. State, 455 So.2d 370, 372 (Fla. 1984), we have assumed that the failure of the trial judge to grant a pretrial motion to "appoint" an expert to assist an indigent defendant in a criminal case can be reversible error. See Dingle v. State, 654 So.2d 164 (Fla. 3d DCA 1995).
Although the issue of compensation of non-psychiatric experts for indigent criminal defendants in non-capital cases has been the subject of substantial case law in many other jurisdictions, there are few reported decisions in Florida. The legislature's use of the word "require" in section 914.06 does not give the courts much direction. The only Florida case that suggests the breadth of the exercise of discretion to authorize an expert or the point at which the exercise of discretion has been abused by the trial court is Burch, and in that case, the court simply concluded that the court was not bound to authorize fourteen thousand dollars for a renowned PCP expert when local, less expensive experts were available. 522 So.2d at 812. In Martin, the Florida Supreme Court did say that the standard of review for appointment of experts is "abuse of discretion." 455 So.2d at 372. See also Quince v. State, 477 So.2d 535, 537 (Fla. 1989), cert. denied, 475 U.S. 1132, 106 S.Ct. 1662, 90 L.Ed.2d 204 (1986).
In attempting to answer the question in this case, we have reviewed the developing law in other jurisdictions. Although this has been of some help, we are bound to conclude that determining "abuse of discretion" in this context has typically boiled down to an ad hoc exercise of intuition by the appellate court that there was a substantial risk that the failure to supply the defendant with an expert deprived the defendant of a fair trial. The prevailing view appears to be that a defendant is entitled to the "basic tools" of an adequate defense, and abuse of discretion is the point at which the court concludes the defense has not been provided such a "basic tool." See generally David Harris, The Constitution and Truth Seeking: A New Theory on Expert Services for Indigent Defendants, 83 J.Crim.L. & Criminology 469, 484 (1992).
Since there has been no clear guidance given by the United States Supreme Court in constitutional terms,[2] the approach taken by state courts varies. Id. at 525 n. 133. Compare Lentz v. State, 604 So.2d 243, 247 (Miss. 1992) (generally, state is not required to furnish funds for indigent defendant to obtain expert testimony) with McBride v. State, 838 S.W.2d 248 (Tex. Crim. App. 1992) (indigent defendant should have same right to expert as non-indigent defendant). Some states require a general showing of "necessity" and, on appeal, require a showing that the denial resulted in "prejudice." State v. Stow, 136 N.H. 598, 620 A.2d 1023, 1027 (1993); Salazar v. State, 852 P.2d 729, 735 (Okla. Crim. App. 1993). In Illinois, the procedure is more formalized. The defendant must specifically inform the court of the need and relevancy; identify the expert the defendant proposes to retain; estimate the amount of the fee; and, finally, prove the defendant is unable to pay. People v. Sims, 244 Ill. App.3d 966, 184 Ill. Dec. 135, 612 N.E.2d 1011 (1993).
The federal courts have been no more precise. In Scott v. Louisiana, 934 F.2d 631, *554 633 (5th Cir.1991), the Fifth Circuit held that non-psychiatric experts should be provided only if the evidence is both critical to the conviction and subject to varying expert opinions. In Moore v. Kemp, 809 F.2d 702 (11th Cir.), cert. denied, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987), the Eleventh Circuit said the defendant must show the trial court that there exists a reasonable probability both that the expert would be of assistance to the defense and that a denial of expert assistance would result in a fundamentally unfair trial. Drawing from the language used by the Supreme Court in Caldwell v. Mississippi, 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985), one of the judges of that court described this test as a "developed assertion of reasonable necessity." 809 F.2d at 712 (Johnson, J., concurring in part, dissenting in part). More recently, in Yohey v. Collins, 985 F.2d 222, 227 (5th Cir.1993), the Fifth Circuit denied relief to the defendant because defense counsel's theory of the case for which he had requested a ballistics expert was "speculative" and because, in requesting a forensics expert, no evidence was offered to the lower court that the autopsy results were inaccurate or subject to disagreement between experts. The Fifth Circuit in Yohey, applying the Eleventh Circuit's Moore test, found the defendant had failed to establish a reasonable probability that the requested experts would have assisted the defense and that denial of such assistance resulted in a fundamentally unfair trial. 985 F.2d at 227.
Some federal courts have been liberal in applying this test. In United States v. Patterson, 724 F.2d 1128 (5th Cir.1984), the court reversed the defendant's conviction after he had been denied the assistance of an expert. The court concluded the defendant was entitled to a fingerprint expert where fingerprint evidence adduced at trial was pivotal to the government's case. In that case, the eyewitness testimony was inconclusive and there were discrepancies concerning the description of the alleged perpetrator. The Patterson court found that, under the facts, appointment of an expert was appropriate both to assist counsel's cross-examination of the government's expert and to explore the validity of the government's evidence. 724 F.2d at 1131. It does appear that since ours is a system that relies largely on the adversarial system for truth-seeking, it is dangerous to give all the tools to the state and hope it will do the right thing and always do it well.
In Little v. Armontrout, 835 F.2d 1240 (8th Cir.1987), cert. denied, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988), the court granted relief to a criminal defendant who was denied an expert in hypnosis. The court ruled that the Missouri supreme court had erred in concluding that defense counsel should have educated himself about hypnosis by self-study at the library and relied on cross-examination to elicit admissions about the improper suggestive effect of the hypnosis.
The cases cited above do suggest a number of factors that may be weighed in this case in determining whether the lower court has abused its discretion in refusing to appoint an expert for this indigent criminal defendant. In this case, the DNA evidence was central to the state's case and the remaining evidence against defendant was not overwhelming. Also, scientific evidence received from an expert is impressive to a jury, Ake v. Oklahoma, 470 U.S. 68, 81 n. 7, 105 S.Ct. 1087, 1095 n. 7, 84 L.Ed.2d 53 (1985), and we perceive that the use of DNA matching to prove identity is especially persuasive. It is also a highly technical methodology that the literature and case law suggest can be vulnerable to attack. See Thomas M. Fleming, Annotation, Admissibility of DNA Identification Evidence, 84 A.L.R.4th 313 (1991); Harris at 519-20. See also Vargas v. State, 640 So.2d 1139 (Fla. 1st DCA 1994), review granted, 659 So.2d 273 (Fla. 1995). In this case, the request was made timely. Also, there was specificity: The expert sought to be appointed was identified, the tasks to be performed were outlined, the hourly rate was given and an estimate of fees was made which fell into the $3,000 range.[3]
*555 Weighing against defendant is the fact that there was little substance to counsel's request. Defense counsel should not have to attempt to train himself in the technical subject before being allowed the assistance of an expert; nevertheless, just by virtue of the lawyer's role, some level of understanding is expected. Counsel should be able to articulate a basis for requiring an expert beyond telling the judge that the subject is "complicated." This would seem to be especially true of forensic sciences commonly involved in criminal cases, such as fingerprinting, ballistics, handwriting and DNA identification. Counsel should be expected at least to know what is in the legal literature and in case law about the topic. In fact, the record in this case shows that, at trial, defense counsel exhibited a thorough understanding both of the DNA matching technique and the specific aspects of DNA identification that are vulnerable to attack on cross-examination. Had defense counsel articulated any of this to the trial judge when the pretrial request for an expert was made, the court may have reached a different decision. The subsequent failure of the defendant to offer expert testimony at trial makes it even more difficult for this court to determine from the record whether the refusal to authorize a DNA expert for the defendant actually caused any prejudice to the defendant. See Martin, 455 So.2d at 372.
The financial resources of Florida's county governments are finite, and trial courts correctly exercise care in expending funds so that resources will be available when truly needed. Nevertheless, given the central importance of the DNA evidence to the state's case (and hence the defendant's defense), the likely benefit of accurate DNA testing to the truth-seeking function of the trial, the diligence of the defense in seeking appointment of the expert and the specificity of the request, we conclude the lower court abused its discretion in denying the expert's appointment. There is no basis on which we could find the absence of expert assistance to the defendant on the issue of DNA identification was harmless error.[4]
REVERSED and REMANDED for new trial.
PETERSON, J., concurs.
GOSHORN, J., dissents, with opinion.
GOSHORN, Judge, dissenting.
I am in full agreement with the following proposition set forth in the majority opinion.
Weighing against defendant is the fact that there was little substance to counsel's request. Defense counsel should not have to attempt to train himself in the technical subject before being allowed the assistance of an expert; nevertheless, just by virtue of the lawyer's role, some level of understanding is expected. Counsel should be able to articulate a basis for requiring an expert beyond telling the judge that the subject is "complicated." This would seem to be especially true of forensic sciences commonly involved in criminal cases, such as fingerprinting, ballistics, handwriting and DNA identification. Counsel should be expected at least to know what is in the legal literature and in case law about the topic. In fact, the record in this case shows that, at trial, defense counsel exhibited a thorough understanding both of the DNA matching technique and the specific aspects of DNA identification that are vulnerable to attack on cross-examination. Had defense counsel articulated any of this to the trial judge when the pretrial request for an expert was made, the court may have reached a different decision. The subsequent failure of the defendant to offer expert testimony at trial makes it even more difficult for this court to determine from the record whether the refusal to authorize a DNA expert for the defendant actually caused any prejudice to the defendant.
As the majority concedes, defense counsel was thoroughly familiar with DNA testing procedures and yet, despite several opportunities, *556 failed to set forth any sufficient reason for the necessity of the requested expert. Why, given his knowledge of DNA testing procedures, Cade's attorney failed to provide any specifics, we can only guess. The most obvious answer is that there was no real basis or necessity for the defense expert. Experienced trial judges are faced daily with groundless motions offered by attorneys in the faint hope that should the jury find against their clients, an appellate court may reach out, grasp the motion and reverse.
Given, as the majority acknowledges, that our standard for review is abuse of discretion, see Martin v. State, 455 So.2d 370 (Fla. 1984), I cannot agree that a trial court abuses its discretion by refusing to appoint an expert where the defendant failed to adequately inform the court of the basis for his request. Accordingly, I respectfully dissent.
NOTES
[1] The federal statute provides:

Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.
18 U.S.C. § 3006A(c)(1).
[2] See the discussion in the various opinions in Moore v. Kemp, 809 F.2d 702 (11th Cir.), cert. denied, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987) and the cases cited therein.
[3] In our earlier opinion, we incorrectly said that appellant's counsel's request lacked specificity. Although no mention of these factors was argued at the hearing, they were contained in the underlying motion.
[4] See McBride v. State, 873 S.W.2d 115 (Tex. Ct. App. 1994); compare Johnson v. State, 476 So.2d 1195, 1202-03 (Miss. 1985).