**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Douglas Chico PATTERSON,
Defendant-Appellant.**

No. 83–4435
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1984.

Robert Sneed, Jackson, Miss., Court-appointed, for defendant-appellant.

Pshon Barrett, Jackson, Miss., for plaintiff-appellee.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

Appellant Douglas Patterson was convicted of bank robbery. On appeal, he contends that the district court erred in refusing to authorize employment at government expense of a fingerprint expert pursuant to 18 U.S.C. § 3006A(e) (1982). Patterson also challenges the admission of certain evidence. For the reasons set forth below, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

On September 25, 1981, the Central Bank of Mississippi was robbed by a black man and a black woman, both of whom were armed. At the bank's closing time, the two waited for the last customer to leave and then approached the tellers' windows. They told a teller, Wanda Buckley, and the branch manager, Clarence Marble, to back away from their windows and kneel on the floor. Buckley and Marble were repeatedly instructed not to look at the robbers' faces, an order with which both of them substantially complied.

After emptying the tellers' windows of cash, the robbers ordered Buckley and Marble into the bank's vault. In the vault, the employees were again told to kneel on the floor and not to look at the robbers. After removing money from the vault, the robbers told Buckley and Marble to remain inside while they left.

Buckley estimated that the two robbers were in the bank for a total of eight minutes. Marble estimated the time to be five to six minutes, approximately four of which elapsed before the actual robbery began.

Appellant Patterson was indicted on November 3, 1981 for violating 18 U.S.C. § 2113(a) & (d) (1982) and 18 U.S.C. § 2 (1982).[1] On September 28, 1982, he filed a motion for appointment and funding of a fingerprint analyst pursuant to 18 U.S.C. § 3006A(e), contending that the government intended to introduce fingerprint evidence at trial. *See* Record Vol. I at 118–20. After a hearing, the district court denied this request. At trial, three of the government's six witnesses testified about fingerprints. Patterson was convicted and now appeals.

## II. ISSUE ON APPEAL.

Patterson contends initially that the district court's denial of his motion for the appointment of a fingerprint expert was prejudicial error. He alleges that he was thus deprived of the opportunity effectively to review and inspect the government's fingerprint evidence, and of the right meaningfully to cross examine the government's fingerprint witnesses. The government argues that because the fingerprint evidence adduced at trial was not "pivotal" to the government's case, it was proper for the district court to deny Patterson's request. Moreover, the government asserts that if the district court erred in its denial, the

error was harmless and resulted in no prejudice to Patterson.

18 U.S.C. § 3006A(e)(1) provides:

Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services.

Because Patterson's indigence is not contested, we focus on the requirement in section 3006A(e) that such services be "necessary for an adequate defense."

In *United States v. Theriault,* 440 F.2d 713, 715 (5th Cir.1971), *cert. denied,* 411 U.S. 984, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973), we stated that the "standards to govern what is 'necessary to an adequate defense' are not susceptible of arbitrary articulation but can best be developed on a case by case basis."[2] The circumstances of *Theriault,* however, illustrate factors that are relevant in every case posing this issue. There, the defendant had been convicted of escaping from federal custody while a prisoner. The facts were not in dispute, and the defendant sought to pose a defense of insanity. When his request for appointment of a psy-

---

1. 18 U.S.C. § 2113(a) provides:

    (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;

    \* \* \* \* \* \*

    Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

    Section 2113(d) provides:

    (d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2 provides:

    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

2. In a concurrence, Judge Wisdom read the legislative history and policy basis of section 3006A(e) to compel the conclusion that "authorization for defense services [is required] when the attorney makes a reasonable request in circumstances in which he would independently engage such services if his client had the financial means to support his defenses." 440 F.2d at 717 (Wisdom, J., concurring). This approach has been followed by several circuit courts of appeals. *See, e.g., United States v. Durant,* 545 F.2d 823, 827 (2d Cir.1976); *Brinkley v. United States,* 498 F.2d 505, 510 (8th Cir.1974); *United States v. Bass,* 477 F.2d 723, 725 (9th Cir.1973); *see also Jacobs v. United States,* 350 F.2d 571, 573 (4th Cir.1965).

chiatric expert was denied, he relied on the testimony of family members, fellow prison inmates easily subject to impeachment, and the prison chaplain, whose testimony was not favorable to the defense. The government offered the testimony of the prison psychiatrist, who opined that the defendant was competent to stand trial and suffered only from "dissocial behavior." The defendant was convicted. We noted in reversing the conviction that we were in the "unusual position" of having before us the entire trial record, which clearly demonstrated the defendant's need for his own expert. 440 F.2d at 715–16.

■ We read *Theriault* to stand for the proposition that where the government's case rests heavily on a theory most competently addressed by expert testimony, an indigent defendant must be afforded the opportunity to prepare and present his defense to such a theory with the assistance of his own expert pursuant to section 3006A(e). This view is consistent with *Bradford v. United States,* 413 F.2d 467 (5th Cir.1969), in which we established that where the government's case is heavily dependent on evidence with regard to which a government expert testifies and the defendant has been denied the appointment of an expert, such evidence is sufficiently crucial to the government's theory that denial of a defense expert constitutes reversible error.

In *Bradford,* the defendant was convicted of stealing postal money orders. He requested and was denied appointment of fingerprint and handwriting experts. At trial, the government offered the testimony of a fingerprint expert and a handwriting expert. The only other evidence linking the defendant with the crime was the testimony of a codefendant, who had pleaded guilty. In these circumstances, we reversed the conviction, holding that "[t]he government's case against [the defendant] depended almost entirely upon the testimony of the two experts. It was therefore necessary, if [the defendant] was to combat this evidence, that he have the assistance of other handwriting and fingerprint experts." 413 F.2d at 474.

Other circuits have used a similar approach. In *United States v. Durant,* 545 F.2d 823 (2d Cir.1976), the court reversed a conviction for the district court's refusal to appoint a fingerprint expert. The government's case other than fingerprint evidence consisted of the testimony of two accomplices, who presumably were easily impeachable. In finding that the defendant should have been permitted the services of an expert, the court stated that the policy underlying section 3006A(e), which is to equalize the imbalance between the government and an indigent defendant, required that "the phrase 'necessary to an adequate defense' must be construed with this commendable purpose in mind. 'Necessary' should at least mean 'reasonably necessary,' and 'an adequate defense' must include preparation for cross-examination of a government expert as well as presentation of an expert defense witness." 545 F.2d at 827. *See also United States v. Bass,* 477 F.2d 723 (9th Cir.1973).

In the case before us, the government contends that *Bradford* and *Durant* (and, presumably, *Theriault*) are distinguishable because in both of them, unlike here, the evidence with regard to which the defendant sought the appointment of an expert was "pivotal" to the government's case. The government argues that there was sufficient evidence aside from the fingerprint testimony upon which the jury could have found Patterson guilty beyond a reasonable doubt.

■ We do not accept the government's position. A review of the trial transcript reveals that the fingerprint evidence adduced at trial may well have been pivotal to the government's case. The testimony of the two eyewitnesses, Buckley and Marble, was inconsistent and not entirely conclusive. Marble testified that the male robber weighed 195–210 pounds, had a dark complexion, and wore a mustache. *See* Record Vol. II at 36, 50. Buckley estimated the male's weight to be approximately 230, and testified that he had a light complexion and no facial hair. *See* Record Vol. II at 10, 31. Buckley testified that the female robber

 

wore a solid pink scarf and blue jeans. Record Vol. II at 21. Marble described the female robber as wearing a red and blue checked scarf and dress slacks. Record Vol. II at 49. Both witnesses testified that they had only brief opportunities to observe the robbers because the male had ordered them not to look at them. Record Vol. II at 28–29, 53. As the defendant points out, although both witnesses identified Patterson in court, he was the only black male present in the room when they did so.

Three of the government's four remaining witnesses testified with regard to fingerprint evidence.[3] The first identified a latent palm print as one he lifted from the bank's deposit counter on the night of the robbery. The second, an FBI agent, identified a set of fingerprints taken from Patterson. The third, a fingerprint expert, testified that the latent palm print taken from the deposit counter matched Patterson's palm print. During direct examination of the fingerprint expert, the jury was shown enlargements of the latent palm print and Patterson's palm print with points of mutual identity charted. The expert charted eight such points of identity.

Although the government asserts that there is no evidence showing either that the latent print was blurred or that the expert's analysis was flawed, we think it clear that the absence of such evidence may merely have been the result of Patterson's inability to explore the area of fingerprints without the help of his own expert. It is entirely possible that another expert might have reached a different result in comparing the latent print and Patterson's print. Moreover, the assistance of an expert undoubtedly would have facilitated Patterson's cross-examination of the government's expert. As in *Theriault* and *Bradford, supra,* we think it is clear that the lack of an expert hampered Patterson's ability to prepare and present an adequate defense. We are unwilling to say that such a handicap was not prejudicial. Thus, we hold that the district

court erred in denying Patterson's request for appointment of a fingerprint expert.

Our disposition of this issue renders consideration of Patterson's other contentions unnecessary.

REVERSED and REMANDED.

---

3. The government's other witness testified only as to the total amount of money taken during

the robbery. *See* Record Vol. II at 64–66.