United States Court of Appeals
Fifth Circuit

**F I L E D**

January 23, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

No. 05-50312

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DANIEL VERNON HARDIN, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, DeMOSS, and OWEN, Circuit Judges.

DeMOSS, Circuit Judge:

We recall the mandate, withdraw the opinion filed on December 29, 2005, and substitute the following:

Daniel Vernon Hardin, Jr. pleaded guilty to a one-count indictment for the attempt to manufacture an unspecified amount of methamphetamine and appeals his sentence on the grounds that the district court erred: (1) in denying Hardin's request for appointment, under the Criminal Justice Act (the "CJA"), 18 U.S.C. § 3006A(e), of an expert to testify at sentencing, and (2) in including "bones," a byproduct of methamphetamine production, in the drug quantity attributable to Hardin. We vacate the sentence

and remand with instructions for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Hardin was indicted on April 13, 2004 on a single charge of the knowing and intentional attempt to manufacture methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment did not allege a quantity of drugs attributable to Hardin. Based upon a finding of Hardin's indigence, defense counsel was appointed for Hardin under the CJA. Hardin pleaded guilty on July 15, 2004.

The Government filed a factual basis for the guilty plea. The factual basis did not proffer a drug quantity but did set forth the Government's ability to prove the elements of the offense in the event the case had proceeded to trial. In that event, the Government would have shown that law enforcement discovered Hardin, who was wanted for a parole violation on a drug possession charge, near a river in proximity to items believed to be connected to the production of methamphetamine. Law enforcement believed that Hardin and another individual were involved in methamphetamine production, and law enforcement found cans and plastic containers filled with clear liquid that smelled of ether and other materials used in methamphetamine production. The containers were discovered in Hardin's vehicle and in the surrounding area. The factual basis also described Hardin's statement, provided after Hardin received warnings as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), in

2

which Hardin admitted his use of methamphetamine on the scene and admitted to stealing methamphetamine from the "cook," the process by which methamphetamine is produced.

When Hardin pleaded guilty, he stated he had no disagreement with the factual basis as submitted by the Government. But Hardin did not admit, at any point in the proceedings, the quantity of methamphetamine attributable to him in connection with his plea to the indictment.

Hardin moved under the CJA for the appointment of Mr. Max Courtney, a chemical expert and lab director, as an expert. *See* 18 U.S.C. § 3006A(e). In his motion, Hardin argued the majority of the quantity of methamphetamine attributed to him was bones, a byproduct that could not, according to Hardin, be included in the calculation of the drug quantity under the guidelines. Hardin proffered Mr. Courtney's testimony. He stated that Mr. Courtney would testify that bones are a toxic precipitate of methamphetamine production and do not qualify as a mixture or substance containing methamphetamine for purposes of U.S.S.G. § 2D1.1.[1] Under the 1993

---

[1]"Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1, note (A)(2003). The comments to § 2D1.1 provide, in relevant part,

"Mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the

amendment to U.S.S.G. § 2D1.1, a material "that must be separated from the controlled substance before the controlled substance can be used" does not qualify as a mixture or substance under the guideline. *See* U.S.S.G. § 2D1.1., cmt. n.1. Hardin argued that bones are such a material, toxic and unusable with methamphetamine. Although the Government argued a mixture of bones and methamphetamine should be included in the § 2D1.1 calculation, Hardin countered that the amended guidelines did not support so including bones. Hardin identified an apparent conflict between a non-precedential decision of the Fifth Circuit, *United States v. Tubbs*, 96 Fed. Appx. 257 (5th Cir. 2004) (unpublished), and a decision of the Seventh Circuit, *United States v. Stewart*, 361 F.3d 373 (7th Cir. 2004). Based upon his interpretation of the amended guidelines and what he identified as a circuit conflict on the method of calculating the quantity of methamphetamine, Hardin argued for the expert's appointment: (1) to retest the material in question to determine whether it contained an unuseable material; (2) to testify to counter the government's arguments about the

---

fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.

*Id*. at cmt. n.1.

4

nature of bones; (3) to advise defense counsel about cross-examination of the government's witness regarding the nature of bones; and (4) to testify about methamphetamine production and the resulting separable waste, i.e., bones.

The district court did not conduct a hearing on Hardin's § 3006A(e) motion for appointment of an expert. The court denied the motion on August 25, 2004, providing no reasons for the disposition.[2]

Hardin also submitted written objections to the presentencing report ("PSR"), which recommended a base offense level of 26 because at least 50 grams but less than 200 grams of methamphetamine were involved in the offense.[3] Hardin's total offense level was 25, and in combination with a criminal history category V, the applicable guideline range was 100 to 125 months. Hardin objected, in part, that the quantity of methamphetamine attributed to him was too high because it included 171.51 grams of bones, an unusable byproduct of methamphetamine production. Hardin

---

[2]At oral argument on appeal, counsel for the government suggested that the district court relied, in part, on its familiarity with the testimony of the expert to be appointed here based upon a prior case before the same district court and on its familiarity with the nature of methamphetamine and bones based upon the court's docket. However, the record on appeal does not demonstrate conclusively whether this suggestion is correct because the district court gives no reason for its denial of Hardin's application for expert appointment.

[3]Two levels were added because the offense involved the discharge of a hazardous substance, and three levels were subtracted for acceptance of responsibility.

also objected to the application of the guidelines as *ultra vires* the Sixth Amendment under *Blakely v. Washington*, 542 U.S. 296 (2004).[4]

On February 9, 2005, the sentencing proceedings were held after the Supreme Court announced its opinion in *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). In overruling Hardin's objection to the inclusion of bones in the drug quantity calculation, the court stated, "[t]he writers of the guidelines have provided that a material or substance containing a detectable amount of controlled substance should be counted and that has been ruled to be the law by the Fifth Circuit." With this ruling, the district court concluded the applicable guideline range was 100 to 125 months' imprisonment.

The district court subsequently sentenced Hardin, under the advisory sentencing scheme applicable after *Booker*, to 72 months' imprisonment, 3 years' supervised release, a fine of $1000, and a $100 special assessment. The district court gave no reason for its departure from the guideline range, other than the advisory nature of the guidelines, despite this Court's directive that a sentence outside of the applicable guideline range requires an articulation of the reasons supporting the departure. *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

---

[4]Hardin's other objections are not relevant to the disposition of his instant appeal.

**DISCUSSION**

Hardin timely appeals, arguing the district court erred in denying his CJA motion in the absence of a hearing and improperly including bones in the drug quantity calculation under U.S.S.G. § 2D1.1.

**I.**

First, we must address the applicable standard of review. Hardin argues that our review is *de novo*, pointing to language from *Unites States v. Patterson*, 724 F.2d 1128, 1130 (5th Cir. 1984) (stating "where the government's case rests heavily on a theory most competently addressed by expert testimony, an indigent defendant must be afforded the opportunity to prepare and present his defense to such a theory with the assistance of his own expert pursuant to section 3006A(e)"). In *Patterson*, the panel addressed a question of law: the meaning of "pivotal evidence" under our Circuit's prior caselaw. *Id.* (citing *United States v. Theriault*, 440 F.2d 713 (5th Cir. 1971)). Such a question of law required *de novo* review. *Id.*

But here we do not address the meaning of a term used in the Court's caselaw treatment of the CJA statute. Instead, we address Hardin's challenge to the district court's denial of his CJA motion for expert appointment. We have previously stated that review of the district court's denial of such a motion is review for abuse of discretion. *United States v. Castro*, 15 F.3d 417, 421 (5th Cir.

7

1994) (finding no abuse of discretion in the denial of a motion under the CJA for psychological examination); *United States v. Williams*, 998 F.2d 258, 263 n.10 (5th Cir. 1993); *United States v. Walborn*, 730 F.2d 192, 194 (5th Cir. 1984). This Circuit has also spoken of the standard in terms of case-by-case review of the record. "Usually the appellate court will be reviewing a trial court denial of a § 3006A(e) motion in light of only the information available to the trial court at the time it acted on the motion." *Theriault*, 440 F.2d at 715 (addressing the definition of a "necessary service"). Such a statement is consistent with review for abuse of discretion. We reject Hardin's argument that *de novo* review applies to the denial of a § 3006A(e) motion.

Here, as before, we review the district court's denial of Hardin's motion for expert appointment under the CJA for abuse of discretion. *See Castro*, 15 F.3d at 421; *Williams*, 998 F.2d at 263 n.10; *Walborn*, 730 F.2d at 194. In so doing, we conclude on this record that the court abused its discretion in denying Hardin's request for expert appointment.

## II.

The CJA provides the procedure both for an indigent defendant to request expert appointment and for the district court to resolve the motion.

Section 3006A(e) provides in relevant part,

Counsel for a person who is financially unable to obtain
. . . expert . . . services necessary for adequate

8

representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1) (2000 & Supp. 2005).

It is undisputed that Hardin was indigent and that he moved properly under § 3006A(e)(1) for expert appointment. Thus, the district court should have granted the appointment "after appropriate inquiry in an ex parte proceeding" if Hardin demonstrated the expert was "necessary for an adequate representation." *See id.; Williams*, 998 F.2d at 263. District courts must "grant the defendant the assistance of an independent expert under § 3006A when necessary to respond to the government's case against him, where the government's case 'rests heavily on a theory most competently addressed by expert testimony.'" *Williams*, 998 F.2d at 263 (quoting *United States v. Patterson*, 724 F.2d 1128, 1130 (5th Cir. 1984)).

The primary issue before the district court at sentencing, raised by Hardin's CJA motion and his objections to the PSR, was the enhancement of his sentence on the basis of the inclusion of bones in the attributable drug quantity.[5] In 1993, the Guidelines

---

[5]Hardin's motion for expert appointment satisfied the requirement that a defendant seeking appointment of an expert under the CJA must "demonstrate with specificity" why the services are necessary. *See United States v. Gadison*, 8 F.3d 186, 191 (5th Cir. 1993). Hardin's sentence differs substantially depending upon whether bones are included in the

were amended to clarify that a "mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. § 2D1.1., cmt. n.1; *United States v. Towe*, 26 F.3d 614, 617 (5th Cir. 1994). Since the 1993 amendment, this Circuit has not resolved in a published opinion whether bones satisfy the Guidelines' definition of a mixture or substance, such that they should be included in the calculation of methamphetamine quantity.

However, this Court has considered, in the wake of the 1993 Amendment, whether bones might be included under U.S.S.G. § 2D1.1 as a mixture or substance in an unpublished opinion, *United States v. Tubbs*, 96 Fed. Appx. 257 (5th Cir. 2004) (per curiam) (unpublished), *vacated*, 125 S. Ct. 1054 (2005), *opinion on remand*, 133 Fed. Appx. 957 (5th Cir.) (per curiam) (unpublished), *cert. denied*, 126 S. Ct. 463 (2005). There, a panel of this Court explained that "[b]ecause bones, a byproduct of the methamphetamine manufacturing process, can be injected by users without separating the methamphetamine, bones constitutes a mixture or substance containing a detectable amount of methamphetamine for purposes of the sentencing guidelines." *Id*. at 257. The factual basis for this statement was not provided. The substance referred to as

---

drug calculation as a mixture or substance under § 2D1.1. Hardin's guideline range was calculated using the amount of methamphetamine found in five exhibits of mixtures, the content of which is unclear from this record.

10

"bones" in *Tubbs* may or may not be the same kind of substance for which Hardin was held accountable in the present case. We simply cannot determine from the record presently before us, nor from *Tubbs*, what is the factual nature of the substance called bones. In any event, the *Tubbs* opinion upon which the Government relied was vacated by the Supreme Court and as such provides no guidance to the disposition of the issues raised here.

Thus, Hardin's objections raised prior to and at sentencing presented a question of law that remains open in this Circuit. In addition to the legal question of quantity calculation under § 2D1.1, Hardin also disputed, on this record, the factual issue regarding the content and nature of bones, irrespective of the application of the guidelines. The Government submits that any error in the denial of the motion or in the sentencing was harmless because Hardin did not challenge the total amount of bones as incorrect. In so arguing, the Government relies on an unpublished opinion from the Tenth Circuit. *United States v. Greathouse*, No. 99-3400, 2000 U.S. App. LEXIS 24489 (10th Cir. Sept. 29, 2000). There, the defendant argued the court erred in calculating his base offense level with mixture quantity rather than the lower quantity of pure methamphetamine. *Id*. at *2. The Tenth Circuit concluded that the use of the larger mixture quantity was appropriate because the weight of the mixture was not in dispute, as the defendant had failed to challenge the weight of the mixture. *Id*. at *7-*8. The

11

court found no abuse of discretion where the defendant waived the appointment of an expert by failing to make a timely request for an ex parte hearing and instead requesting appointment in open court at the time of sentencing. *Id*. at *10. *Greathouse*, of course, has no precedential value as an unpublished opinion and more importantly to this appeal, does not inform the question whether the court erred in failing to give an ex parte hearing on this record where Hardin moved, in a timely[6] and specific manner, for expert appointment on a disputed factual issue regarding the primary issue to his sentence determination, that is, whether bones are included under U.S.S.G. § 2D1.1.

Our holding in this case does not reach so broadly as to require in all circumstances that a district court hold a hearing on an ex parte application for appointment under § 3006A(e). Neither the statute's plain language nor our caselaw interpreting it supports such a broad rule. *See, e.g.*, *Gadison*, 8 F.3d at 191 (requiring a defendant "demonstrate with specificity" why the requested services are necessary); *United States v. Scott*, 48 F.3d 1389, 1395-96 (5th Cir. 1995) (refusing to construe a motion for continuance, in which questions were raised related to expert testimony, as a motion for appointment because the defendant's request did not refer to either § 3006A or the defendant's

---

[6]The district court granted Hardin an extension of time in which to file the § 3006A(e) motion. That decision is not challenged here.

indigence and did not primarily seek appointment of an expert). Instead, the language of the statute requires that the expert services not be authorized in the absence of an "appropriate inquiry in an ex parte proceeding" and two determinations by the court: that the services are necessary for an adequate defense and that the defendant is financially unable to obtain those necessary services. *See* 18 U.S.C. § 3006A(e)(1).

On this record, however, the district court should have permitted an ex parte proceeding on the motion for appointment because the indigent defendant presented an ex parte application under § 3006A(e)(1) specifically identifying as the disputed issue whether bones are "materials that must be separated from the controlled substance" prior to use or whether "such mixture cannot readily be separated from the mixture or substance." *See* U.S.S.G. § 2D1.1, cmt. n.1. The resolution of this issue turns on questions of both fact and law, the nature of bones and the interpretation of § 2D1.1, and is material because Hardin's applicable sentence differs substantially dependant on the issue's resolution. On this record, and after an ex parte proceeding on the motion, the district court should have granted Mr. Courtney's appointment as necessary to Hardin's adequate defense, under § 3006A(e)(1), to inform the description and characterization of bones.

On this record we cannot determine what, if anything, the court relied upon in denying expert appointment, and the record

13

does not confirm what is the factual nature of bones for purposes of making the necessary § 2D1.1 determination.

### III.

Based on the foregoing, we determine that prior to Hardin's resentencing, a hearing on the nature of bones is required. Only upon such a record may the district court then address whether the material found at the scene of Hardin's apprehension should be included as a mixture or substance under § 2D1.1 or should be excluded as a material that must be separated prior to the use of methamphetamine. *See* U.S.S.G. § 2D1.1.

Such proceedings are required before this Court can review Hardin's remaining challenge, that the court erred in including bones in the attributable drug quantity under § 2D1.1. As such, we need not and cannot review, on this record, Hardin's challenge to the district court's inclusion of the bones as a matter of law. We state no opinion on the propriety of including bones within the drug quantity calculation under U.S.S.G. § 2D1.1.

On remand and following the district court's hearing of testimony on the nature of bones and analysis of the material under § 2D1.1, a sentence within the correctly determined guideline range will be entitled to a strong presumption of reasonableness. *Mares*, 402 F.3d at 519. Review of whether the guidelines are correctly applied – whether bones are included under § 2D1.1 – is *de novo*. *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005). In

the event the district court resentences Hardin outside of the applicable guideline range, then, as we have previously directed, the court

> should carefully articulate the reasons [it] concludes that the sentence [it] has selected is appropriate for that defendant. These reasons should be fact specific and include, for example, aggravating or mitigating circumstances relating to personal characteristics of the defendant, his offense conduct, his criminal history, relevant conduct or other facts specific to the case at hand which led the court to conclude that the sentence imposed was fair and reasonable. Such reasons are essential to permit this court to review the sentence for reasonableness as directed by Booker.

*Id.*

**CONCLUSION**

Based upon the foregoing, we vacate Hardin's sentence and remand the case to the district court with instructions (1) to appoint Hardin's chemical expert and take testimony from such expert as well as any relevant expert tendered by the United States for purposes of providing testimony on the issue of the nature and character of bones vis-a-vis methamphetamine production and sentencing; (2) to determine the guideline range for sentencing in light of any changes in the relevant drug quantity necessitated by the court's findings based upon the expert testimony; (3) to resentence Hardin; and (4) to provide reasons for any departure from the calculated guideline range in conformance with our directive in *Mares*.

**SENTENCE VACATED; REMANDED WITH INSTRUCTIONS FOR RESENTENCING.**

15